SEBY B. JONES AND ROBERT D. GORHAM v. ANDY GRIFFITH PRODUCTS, INC. AND SILVER'S ENTERPRISES, INC.

No. 7710SC134

(Filed 7 February 1978)

**Landlord and Tenant § 11— proposed sublease—withholding of consent by landlord—reasonable grounds**

> In an action to recover for unpaid rent and taxes due pursuant to a written lease agreement which also permitted subletting with approval by the lessor, the trial court did not err in holding that plaintiffs' refusal to consent to a proposed sublease was reasonable where the evidence tended to show that plaintiffs originally rented the premises to defendant for use as a restaurant; defendant sought to sublet them to an electronics company which already rented space in the shopping center in which the premises in question were located; and plaintiffs objected to the proposed sublease because they desired to maintain a restaurant operation in the subject premises in light of the nature of the building and the desire for percentage rental.

APPEAL by defendants from *McLelland, Judge*. Judgment entered 15 October 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 6 December 1977.

This action was instituted by plaintiffs seeking judgment against defendants for unpaid rent and taxes due under the terms of a written Lease Agreement executed on 15 April 1970. By the terms of said Lease Agreement, defendant Andy Griffith Products, Inc. (Andy Griffith) leased from plaintiffs certain premises owned by plaintiffs and located at 2110 North Boulevard, Raleigh, North Carolina. The subject premises were adjacent to and in

front of Gateway Plaza Shopping Center. The Gateway Plaza Shopping Center proper was separately owned by plaintiff Seby B. Jones and wife, Christina B. Jones, although both the subject premises and the Gateway Shopping Center proper were managed by Regional Properties, Inc., whose major stockholder was plaintiff Jones.

The Lease Agreement between plaintiffs and Andy Griffith was for a term of twenty years at a monthly rental of $1,488.50 ($17,862.00 annually), or 6½ per cent of annual gross sales should that percentage exceed $17,862.00. The Lease Agreement also required plaintiffs, at their own expense, to construct a building and other improvements on the premises in accordance with certain plans and specifications which were not included in the record or with the exhibits on this appeal. Section 1.08 of the Lease Agreement provided that the premises "may be used for restaurant purposes." The Lease Agreement also contained a Section 1.16, which read as follows:

> "SUBLETTING. The parties to this Lease Agreement shall have the right to sublet the whole or any parts of the leased premises. No subletting and no acceptance by Lessor of any rent or other sum of money from any assignee or sublessee shall release Lessee from any of its obligations under this Lease Agreement. Any subletting by Lessee shall be subject to the approval of Lessor, which approval shall not be unreasonably withheld. The withholding of approval of any proposed subletting to use the leased premises to conduct any business substantially duplicating any other business conducted in Gateway Plaza Shopping Center at the time of such proposed subletting shall not be deemed unreasonable."

On 1 September 1972, all of the parties herein executed an Assignment, Consent and Amendment to Lease, assigning the leasehold to defendant Silver's Enterprises, Inc. (Silver's). By this agreement Andy Griffith was released from any percentage rental obligation, but otherwise was not released from its obligations under the lease, with the exception of certain amendments to the lease not pertinent to this appeal. Silver's (assignee) agreed to indemnify and save Andy Griffith (assignor) harmless from all claims under the lease from and after the time that possession of the leased premises passed to Silver's; and to perform all

covenants and obligations under the Lease Agreement, again with certain exceptions not pertinent to this appeal.

Subsequent to the assignment, Silver's commenced the operation of a Long John Silver's restaurant, having converted the premises from the Andy Griffith Barbecue restaurant previously operated by Andy Griffith.

Plaintiffs filed their complaint in this action on 20 January 1975, alleging that Silver's had abandoned the premises in question, had failed to pay monthly rentals from and after August 1974, and had failed to pay ad valorem property taxes. Defendant Andy Griffith answered, and cross-claimed against defendant Silver's, pleading the terms of the aforementioned Assignment, Consent and Amendment to Lease. Defendant Silver's answered and pled as an affirmative defense that they (Silver's) had procured a sub-tenant willing to rent the premises and that plaintiffs had unreasonably withheld approval of said sub-tenant in breach of the Lease Agreement.

At trial before Judge McLelland sitting without a jury, the plaintiffs presented evidence through their leasing agent, John C. Ralph, President of Regional Properties, Inc., which tended to show, *inter alia*, that unpaid rentals and taxes owed by Silver's under the Lease Agreement amounted to $27,203.21 and $1,867.92, respectively; that after Silver's had vacated the subject premises but while still paying rent, an inquiry was communicated through Ralph to plaintiffs as to whether a sublease of the premises to Mr. Wayne DeLisse, operator of Lafayette Radio, Inc. would be approved; that said inquiry was answered in the negative; that at the time in question, DeLisse was engaged in the sale and repair of radio, television and other electronic equipment, was a tenant of plaintiff Jones in Gateway Plaza Shopping Center, and had over one year remaining on his lease; that one reason that consent to such a sublease was withheld was that the building constructed by plaintiffs on the premises was originally built for a restaurant and plaintiffs desired to maintain a restaurant therein; that another reason for plaintiffs' refusal to approve the proposed sublease was the fact that DeLisse was then a tenant in another building in the shopping center.

Defendants' evidence related basically to Silver's attempts to sublet the premises to Lafayette.

Further facts pertinent to the resolution of this appeal will be brought out in the opinion.

Following the trial of this case, the court below made findings of fact and conclusions of law holding that plaintiffs' refusal to consent to a sublease to Lafayette was not unreasonable and thus did not constitute a breach by plaintiffs of the Lease Agreement, and entered judgment against defendants, jointly and severally, for the sum of $29,071.13. The court also held that defendant Andy Griffith was entitled to be indemnified and held harmless by defendant Silver's for any amount it (Andy Griffith) might be required to pay to plaintiffs under the judgment. From this judgment, defendant Silver's has appealed. Defendant Andy Griffith has appealed from so much of the judgment as is adverse to it.

*Poyner, Geraghty, Hartsfield & Townsend, by David W. Long and Lacy H. Reaves, for plaintiffs.*

*Kimzey & Smith, by James M. Kimzey, for defendant Silver's Enterprises, Inc.*

*Sanford, Cannon, Adams & McCullough, by H. Hugh Stevens, Jr., for defendant Andy Griffith Products, Inc.*

BROCK, Chief Judge.

The sole question presented for review in this case is whether the trial court erred in holding that plaintiffs' refusal to consent to the proposed sublease to DeLisse was reasonable. If plaintiffs' refusal were found to be unreasonable, such would constitute a breach of that part of Section 1.16 of the Lease Agreement providing that approval by plaintiffs of a proposed sublease "shall not be unreasonably withheld."

The trial court made the following finding of fact:

"18. Plaintiffs' refusal to consent to a sublease of the 2110 North Boulevard premises to DeLisse was not unreasonable."

A threshold question arises as to the scope of appellate review of such a finding. As a general rule, findings of fact by the trial court are conclusive on appeal if supported by any competent evidence. However, when an item designated as a "finding of

fact" is in reality a mixture of findings of fact and conclusions of law, such a finding is itself reviewable by the appellate courts. *Brown v. Board of Education*, 269 N.C. 667, 153 S.E. 2d 335 (1967). The above finding by the court is just such a mixed finding. It involves "an application of principles of law to the determination of facts." *Id.* 269 N.C. at 270, 153 S.E. 2d at 338. In reviewing this mixed question of law and fact, we must determine whether facts otherwise found by the trial court are legally sufficient to support the conclusion that plaintiffs' refusal to consent to the sublease was not unreasonable. We hold that they are.

The trial court made the following finding of fact:

"16. Plaintiffs' decision to disapprove a sublease to DeLisse was reasonably based upon the nature of the building at 2110 North Boulevard. Such building was constructed and designed for use as a restaurant. Because of factors such as the cost of heating, ventilating and air conditioning and electrical service, the cost of construction of a building designed for use as a restaurant is substantially greater than the cost of construction of a comparably sized building designed for general merchandising purposes, such as that occupied by DeLisse in Gateway Plaza Shopping Center. The occupancy of the 2110 North Boulevard premises by a non-restaurant tenant such as DeLisse could not reasonably have been expected to yield as great a return on plaintiffs' investment as could be expected from the operation of a restaurant thereon."

There is uncontroverted evidence in the record that one of plaintiffs' reasons for withholding consent to a sublease to DeLisse was their desire to maintain a restaurant operation in the subject premises due to the higher costs of the construction of the building, and due to demographic factors in the area, including tenant mix in the shopping center. Unquestionably, their motive was to enhance the potential for the percentage rentals contemplated in the Lease Agreement. There is no suggestion of bad faith in plaintiffs' refusal to accept a subtenant. Rather, the record indicates that plaintiffs or their agents actively contacted some thirty-six potential tenants for the building, eventually locating one who started paying rent on 8 February 1976.

Thus we come, in our analysis, to the question of whether plaintiffs' desire to maintain a restaurant operation in the subject premises in light of the nature of the building and the desire for percentage rental constituted reasonable grounds for withholding consent to the proposed sublease to Lafayette. We are unable to find any guidance on this question in the case law of this jurisdiction. Other states have, however, faced similar problems in interpreting consent to sublease clauses in leases. Much of the existing case law is summarized in Annot., 54 A.L.R. 3d 679 (1973).

The court in *Broad & Branford Place Corp. v. J. J. Hockenjos Co.*, 132 N.J.L. 229, 39 A. 2d 80 (1944) discussed the standard for judging the reasonableness of a landlord's action in withholding consent to a sublease, as follows:

> "Arbitrary considerations of personal taste, sensibility, or convenience do not constitute the criteria of the landlord's duty under an agreement such as this [not to unreasonably withhold consent to a sublease]. Personal satisfaction is not the sole determining factor. Mere whim or caprice, however honest the judgment, will not suffice. (citations omitted) *The standard is the action of a reasonable man in the landlord's position.* . . . The term 'reasonable' is relative and not readily definable. As here used, it connotes action according to the dictates of reason—such as is just, fair and suitable in the circumstances." (Emphasis added.) 39 A. 2d at 82.

In *American Book Co. v. Yeshiva University Development Foundation, Inc.*, 59 Misc. 2d 31, 297 N.Y.S. 2d 156 (Sup. Ct. 1969), the court held that a lessor associated with a religious university acted unreasonably in withholding consent to a proposed sublease on grounds of philosophical and idealogical differences and the controversial nature of the proposed subtenant, a planned parenthood organization, which intended to use the space for the same type of functions as the prime tenant. In the course of the opinion, the court set out certain objective criteria which might form a basis upon which to predicate a reasonable refusal of a subtenant. These are (1) financial responsibility of the proposed subtenant; (2) identity or business character of the subtenant—his suitability for the particular building; (3) legality of the proposed use of the premises; and (4) nature of the occupancy, such as office, factory, clinic, etc. 297 N.Y.S. 2d at 160.

Obviously, plaintiffs' refusal to consent to the proposed DeLisse subtenancy was grounded upon considerations such as those embodied in (2) and (4) above, which if reasonable in and of themselves, constituted an objective business judgment as opposed to an arbitrary or whimsical and thus unreasonable decision. Based upon competent evidence, the trial court found that plaintiffs' preference for a restaurant operation was reasonable due to the nature of the building and the expectations of a higher return on investment. This finding is conclusive on appeal even though defendants presented evidence from which the court might have found plaintiffs' expectations unreasonable.

We hold therefore, that plaintiffs' decision to withhold consent to the proposed sublease was based upon legally sufficient, "reasonable" grounds. We are not saying that in all cases such as this, a withholding of consent by a landlord will be adjudged reasonable where the proposed subtenant is in a different type of business from the prime tenant. Each case must be determined upon its own peculiar facts. However, the burden of proving the unreasonableness of the landlord's conduct rests upon the party challenging such conduct. *Broad & Branford Place Corp. v. J. J. Hockenjos Co., supra; Arrington v. Heller International Corp.*, 30 Ill. App. 3d 631, 333 N.E. 2d 50 (1975).

In light of our decision, we find it unnecessary to consider any questions raised by the trial court's finding of fact No. 17, to the effect that plaintiffs' withholding of consent was reasonably based upon the fact that DeLisse was already a tenant of plaintiff Jones in Gateway Plaza Shopping Center.

For the reasons set out above, the judgment of the trial court is

Affirmed.

Judges MARTIN and CLARK concur.