(12 Misc. Rep. 96.)

### KRANICHFELT v. SLATTERY.

(Common Pleas of New York City and County, General Term. April 1, 1895.)

1. DECLARATIONS—NOTARY PUBLIC—IMPEACHING CERTIFICATE.
   Oral declarations out of court by a notary public whose testimony can be had are not admissible to impeach his certificate, but are only admissible to impeach his testimony where he has testified in support of his certificate.
2. BONDS—PROOF OF DELIVERY—POSSESSION.
   Possession of a bond by the obligee is prima facie evidence of delivery.

Appeal from city court, general term.

Action by Charles Kranichfelt against John Slattery. From a judgment of the city court (29 N. Y. Supp. 687) affirming a judgment entered on a verdict in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

James P. Campbell, for appellant.

F. P. Trautmann, for respondent.

DALY, C. J. The action was brought upon a bond alleged to have been executed by the defendant, as surety for the performance by one Lynch of his contract with plaintiff to excavate the latter's lot on Audubon avenue of rock and earth, and to remove from adjoining premises some of said rock and earth, which had been placed thereon by Lynch, and also to do the mason work for new buildings on the plaintiff's lot. The defense was a denial of the execution of the bond sued upon, and the question tried before the jury was whether the signature to the bond was defendant's signature, or was a forgery. The execution and delivery of the bond were proved by its production by the plaintiff and a certificate of acknowledgment by a notary public, Charles W. Pinckney, of New York county, attached thereto, to the effect that on the 8th day of April, 1892, John Slattery, known to him to be the individual mentioned in and who executed the instrument, appeared before him, and duly acknowledged that he executed the same. The defendant called the notary as a witness, and showed by him that he did not personally know the party making the acknowledgment in question, who was brought to his office by Lynch, and identified by the latter; and the defendant was sworn on his own behalf, and testified that he never signed nor acknowledged the bond. The defendant was then allowed, under plaintiff's objection, to testify that some 16 months subsequent to the date of the certificate he called upon the notary, in company with a Mr. Walker, and that the notary stated to them that he did not know the defendant, and had never seen him until that time, and that defendant had never appeared before him. Walker's testimony to the same effect was also admitted, under

plaintiff's objection; but, at the close of the examination of that witness, the court, on motion of plaintiff, struck out the testimony of Walker and of the defendant in regard to their interview with the notary. The defendant excepted to the granting of the motion.

The certificate of a notary of the acknowledgment of an instrument is not conclusive, and may be rebutted, and the effect thereof may be contested by a party affected thereby. Code, §§ 935–937. But the certificate cannot be rebutted by proof of oral declarations of the notary, who is living, and whose testimony can be had; such declarations not being made in the course of his official duty, but long after the certificate was executed. They are mere hearsay, and inadmissible. 1 Phil. Ev. 349, 350 (Cowen & H. notes); 1 Greenl. Ev. 123–126. His declarations would be admissible to impeach his testimony if he affirmed the truth of the certificate when testifying as a witness. In such case it would be proper, as affecting his credibility, to prove that he had made statements to the contrary. Id. 462. But the notary, who was called as a witness, did not affirm the truth of his certificate, but in fact denied it; testifying that he did not know the defendant, and took the acknowledgment of a stranger who was introduced to him by Lynch. The defendant, therefore, had direct, competent evidence from the notary, and in his own examination, to rebut the certificate, and there was no necessity for introducing the notary's declarations out of court. No confirmation of the latter's testimony was needed, for it was not disputed; and, if it had been, proof that the witness had made similar statements at another time would not be admissible in corroboration of his testimony, under any known rule of evidence. The case differs from that of a witness charged with a fabrication of a story for the purposes of a trial, in which case previous declarations to the same purpose, made when there was no suspicion of influence or interest, may be shown. Baber v. Railroad Co., 9 Misc. Rep. 20, 29 N. Y. Supp. 40. The evidence, therefore, was improperly admitted, and plaintiff, having objected in time, was entitled to have it struck out.

Defendant, having thus offered incompetent evidence, cannot reasonably complain of the effect upon the jury of having it struck out; but there is no reasonable ground for the apprehension that the jury were misled by the elimination of the incompetent evidence into supposing that the certificate of the notary remained unimpeached. No intimation of such a ruling appears in the case, and defendant could have guarded against a wrong impression by asking for appropriate instructions. In the absence of the judge's charge from the case, we are to assume that the issues were fairly submitted upon the evidence, and that the effect of the evidence was fairly and fully stated. Upon the whole case, there was evidence to sustain the verdict, and to satisfy the requirement of law imposing upon plaintiff the burden of proving the execution and delivery of the bond. Although the effect of the notary's certificate had been destroyed by the notary's evidence that he did not know the party making the acknowledgment, there was competent evidence of the execution of the bond. The bookkeeper of the Mur-

ray Hill Bank, where the defendant kept his account for years, who had thousands of his checks pass through his hands, was familiar with his signature, and therefore a competent witness, testified to his belief that the signature to the bond was the signature of the defendant. There were admittedly genuine signatures of defendant in evidence for the jury to compare with the bond, and, although an expert in handwriting called for defendant pointed out many differences between the disputed and the genuine signatures, some of the most important differences were discernible among the genuine.

The most important evidence, however, on plaintiff's behalf, was elicited upon the cross-examination of defendant, who testified that he agreed to and did sign a bond or contract, as surety for Lynch, in regard to a contract "in relation to a portion of the Audubon matter with which Kranichfelt [the plaintiff] had to do," and that this was about May, 1892 (the bond in suit was dated April 6, 1892, and this testimony was given in January, 1894); "but it was not exactly for Kranichfelt. It was for a man who owned adjoining property. It was about getting rock off the adjoining property. There was something about getting rock off the adjoining property." It thus appeared that defendant had signed some paper,—a bond or contract,—as surety for Lynch, with reference to one of the matters mentioned in the bond in suit; also, that he was quite friendly with Lynch, who was inspector of sewers, and was inspecting work which defendant was doing, and had more or less to do with that work,—facts which the jury might weigh in deciding what credit to give defendant's testimony that the bond in suit was not the bond which he then signed, and that he was not the person introduced by Lynch to the notary, and who acknowledged the bond. The defendant also admitted the receipt from the plaintiff's attorney, in June or July, 1892,—two or three months after he executed the paper which he admits,—of a written notification of the failure of Lynch to carry out and complete two contracts respecting Audubon avenue; and that the notice referred to him as surety; and that a bill of expenses, amounting to $770, was inclosed with the notice; and that he was required by it to carry out the contract of Lynch, or the plaintiff would look to him for any damage he might sustain. Defendant admitted that he paid no attention to this written notice. The plaintiff's evidence was that it was personally served upon him, and that after reading it he said it was all right. Defendant denied this, and swore that he received the communication by mail. It was for the jury to find the fact, and whether an admission on defendant's part was indicated by his words. The motion to dismiss the complaint was therefore properly denied. The other exceptions show no error. Objection to the admission of the bond in evidence, on the ground of want of proof of delivery, was untenable. Possession by the obligee was prima facie evidence of delivery. 2 Am. & Eng. Enc. Law, 459. The judgment and order must be affirmed, with costs. All concur.